Good morning, Your Honors. Good morning. Christopher Wohl on behalf of Appellant Shingle Springs Band of Miwok Indians, which I'll refer to this morning as Shingle Springs or the Tribe. I'd like to reserve two minutes for rebuttal. Okay, watch your time. I will. Thank you. The Tribe and the Union never expressly agreed to arbitrate the issue of arbitrability and certainly never agreed to arbitrate issues pertaining to employee personnel matters, which is why the District Court erred in granting Respondent United HERE's motion for judgment on the cleavings. The issue of arbitration is to be determined by the court and not an arbitrator. Courts must decide the issue before compelling arbitration, which is consistent with long lines of U.S. Supreme Court cases cited in the Tribe's brief, including Granite Rock v. International Brother of Teamsters. A party cannot be required to arbitrate an issue that is not subject to arbitration. It is well established that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which the party has not agreed to submit. That's from the long line of U.S. Supreme Court cases. United HERE's sole claim for relief is to compel arbitration of two employee terminations pursuant to a neutrality agreement called a Memorandum of Agreement or the MOA. The MOA is not a collective bargaining agreement. Important distinction for the Court. The Tribe and the union never agreed to arbitrate employee terminations where other personnel matters. Roberts. Well, so that's a dispute over the scope of the agreement that you all entered into, and I guess I don't see why that isn't covered. That kind of dispute isn't covered by the pretty broad language of the arbitration provision. Right. It says any dispute over the interpretation or application of the agreement is to be shunted off to arbitration, and I guess I don't see why that language doesn't encompass the very dispute you just referenced. Sure. I appreciate that. I think that's the leads to the distinction between the cases the Court asked the parties to further examine, which is the Granite Rock U.S. Supreme Court decision and the Ninth Circuit decision in Desert Palace. The distinction between those two cases is pretty clear. Desert Palace involved a collective bargaining agreement which covered the terms of employment between the union and the company. It covered wages, hours, all the typical components of a CBA that you would expect to find, including an arbitration provision. Desert Palace held that because the parties agreed to arbitrate labor disputes that the overbroad and all-encompassing arbitration provision in that CBA did require arbitration. The Court determined that. But in this case, the parties agreed to arbitrate any dispute which is broader than labor disputes. Well, the distinction, Your Honor, I think is pointed out by the Supreme Court decision in Granite Rock, which looked at really the agreement based on contract principles. What do the parties intend? What does the agreement say? Well, so there are two questions here. Who should decide whether it's arbitratable and is it arbitratable? So I think you're arguing a court should decide whether it's the court should decide whether it's arbitratable, and then we have to decide whether it's, I guess I'm saying that wrong, arbitrable. So say we are going to decide whether it's arbitrable. So let's separate out the questions. Let's put aside who's going to decide. Say we're going to decide. You're arguing that even if we decide this question, the phrase in the contract that says any dispute about this contract will be arbitrated isn't enough to say that this dispute needs to be arbitrated? Sure. Yeah, I think that's the Honor makes a good point. I think that the first analysis or question is, is the dispute subject to arbitration and we say it's not because the agreement doesn't say that. Number two, the terms of the agreement don't require arbitration of personnel matters. If the union is to be held true. But how can we tell when the dispute started? So, I mean, we're in a very odd posture because it happens we now have an award from the arbitrator. But when this all started, all we knew was that the union was trying to enforce the agreement to remain neutral. And at that point, the remedy could have been money to the union or a speech with the union. It didn't have to have anything to do with reinstatement. How do we even know that this is like an employment dispute in the typical sense of putting someone back in their job? That's the point. The MOA, which is what the parties are here arguing about today, doesn't allow for any remedies for affected employees. There's no provision for back pay. But when this dispute started, there was no reason to think that was the remedy they were seeking, was there? If there was, I missed it. How do we know that the only remedy they were seeking was reinstatement? Well, they want to have the termination, which is a personnel decision, arbitrated. Right. But maybe the remedy is the union was hurt by the fact that you fired these two employees, so you should give some money to the union or let the union give a speech or something. It wouldn't have to be reinstatement of the employees. But the union doesn't represent the employees. They're not changing their status. Right. The union is representing itself, saying you weren't neutral. You were supposed to be neutral when we were trying to organize, and you weren't. So why isn't that a dispute about exactly this contract? I think we go back to the Granite Rock decision, which requires the court to examine the intention of the parties and what the contract actually says. And if the parties intended to have employment terminations or any adverse action part of an arbitration process, it would have said that. But what I'm saying is how – what about this dispute? When the union said, hey, you weren't neutral, what about that showed that it was kind of employment dispute in the sense that you seemed to be thinking it was about like something where an employee would be reinstated? I just think it's a stretch for the union to argue that employment terminations are encompassed by the MOA. They're just not. And these employees that were terminated have no standing to allege. But they're not parties. Well, they're not parties. They have no standing. That's the point. The union doesn't represent them. They can't represent themselves in an arbitration proceeding under the MOA. Their remedy is to proceed through tribal court. That's their remedy. And what would prevent that from happening? What about allowing this case between the union and the casino to go forward would prevent the employees from doing whatever they do on their own capacity? Nothing. That's the remedy, Your Honor. That's the point. So then what's the problem with having this case arbitrated? Well, because it's a separate arbitration form. They have to go through the tribal court process. They're separate. I know the union wants to have it that way, but that's not the way it works. They want to use the MOA as a way to establish that they've already formed and agreed to have a union at the casino, which is just not happening. How do we know that from anything they asked for when they asked to arbitrate this? That's the clear inference, Your Honor. Well, what did you think was arbitrable? When you entered this MOA that said we'll arbitrate things, what would be an example of something that would be? Disputes under the MOA would include the card check procedure, any issues regarding any person claiming the other person was not remaining neutral. This far exceeds that. And if the parties in charge. And why is firing someone for supporting the union not an example of lack of neutrality? Well, that's their claim, Your Honor, but there's nothing in the arbitration degree or in the MOA that calls for, you know, that sort of process to occur where employees, if that was the case, the union could say any employee that allegedly supports union organizing that suffered some adverse actions could then arbitrate their claims under the MOA. That's just not the case. So shouldn't the tribe then have said, but anything that involves specific employees' employment needs to be excluded from this because we have a separate process? I mean, that would have been a much more helpful way to write this contract. In hindsight, Your Honor, probably that would have been something that the party should have done, but I believe that it's clear on its face, just alone, that there's no remedy available for employees here. It's just not allowed under the contract. And I think that's the big distinction between the holding in the Granite Rock decision and Desert Palace. Again, Desert Palace focused on a labor agreement. It was a CBA. This is not a CBA. This is a contract between the union and. . . But I think that gets to who gets to decide arbitrability, not really whether it's arbitrable. I think it's both, Your Honor. You can't have. . . They're somewhat intertwined. The issue of who decides arbitration versus is the claim subject to arbitration, I think, are intertwined. There is no basis under the MOA to arbitrate claims related to employment or personnel matters. That was never the intent. And if it was, it would have said as much in the MOA. It just doesn't say that. So I think the court here should look to the Supreme Court decisions, including Granite Rock, to focus on interpretation of contract. What does the agreement say? What are the parties' intent? And I think, clearly, if you look at the MOA in that light, the court will determine that there was no agreement that terminations are subject to arbitration. Counsel, did you want to save some time for rebuttal? I do, Your Honor. Thank you. Thank you. Good morning. Kristin Martin of McCracken Stemmerman-Holsberry representing Unite Here International Union. I will first answer the Court's question regarding Granite Rock, and then I'll explain why the Court doesn't need to reach that question. Granite Rock did not implicitly overrule Desert Palace. There's obviously two types of disputes about arbitrability. One is whether the parties made a contract at all. And the other occurs when there's no dispute that there is a contract, and the question is whether the parties disagree about is whether the contract requires a particular dispute to be resolved through arbitration. The issue before the Court in Granite Rock was the first type. There was a dispute about whether a contract had formed because there was a question about whether there was a ratification vote that was a condition of forming that contract. Now, the Court also acknowledged in Granite Rock that the parties could have agreed to submit their contract formation arbitrability dispute to arbitration. And that's on the first option. Kagan, didn't the Court say that the parties had agreed that the District Court would decide arbitrability? That's right. And then there's a footnote that says, if not, we would have applied first option. So why doesn't that suggest that first options is now the rule for figuring out whether arbitrability has been given to the arbitrator to decide? The reason why, Your Honor, is because Desert Palace was aware of first options. It distinctly distinguished it. But Desert Palace was our court, and Granite Rock is the Supreme Court. So once the Supreme Court says we would apply first options in the absence of agreement, why doesn't that tell us we were wrong? Because what you would have to say then is that just by reciting that first principle, when it wasn't the issue before the court in Granite Rock, act to over or create an overruled Desert Palace. And that would be a stretch, I think, to say reciting a first principle that the court was aware of in the first instance. But what is the other purpose of that footnote? I mean, isn't that footnote basically saying we would be applying first options? Even in a case about a CBA and labor, we would be applying first options if not for the parties' agreement. I don't know what else to make of that footnote. So there is a problem with Desert Palace, that it seems to be inconsistent with AT&T v. Communication Workers. But first options was aware of that case. Desert Palace was aware of that case. And Desert Palace has been reaffirmed by this Court. This panel or prior panels relied on that principle. Later panels relied on that principle. So it's the law of this Court. I think it's a stretch to say that Granite Rock, by reciting that principle, even though it wasn't the issue before the court in Granite Rock, overrules Desert Palace. But if the Court does conclude that Desert Palace was implicitly overruled by Granite Rock, then the question is, what does the Court do? And I think it's unnecessary for the Court to actually reach that question, to use this case to reexamine its Desert Palace precedent. And there's three sort of discrete reasons why. It's undisputed, right? This is one of the first principles, is that a union employer can agree to submit their dispute about arbitrability to an arbitrator. They just have to be clear about it. And that's what the parties did here. The arbitration clause applies to any dispute about the interpretation or application of the agreement. That's the same language that exists in Desert Palace. So at the time the parties made their agreement in 2012, they used the language that at least in this circuit said that's how you submit a dispute about arbitrability to the arbitrator. Okay. Let's assume we're going to decide, just for a moment, whether it's arbitrable and maybe you could talk about why you think it is and why you think you should win anyway, even if it's an issue we should decide, or is there some reason why we shouldn't decide this? Because wouldn't that be another way to skip the issue, is just we just decide the question? That's right. And that's the second reason I was going to provide. There's not really a dispute about arbitrability here at all. The dispute is about the meaning of paragraph 5A, the neutrality clause. Did the employer imply opposition to unionizing when it fired Chris Garagase? The union believes it did. The employer believes it didn't. That's a sort of straightforward question for the arbitrator about the meaning of the contract. There's no real dispute about what the arbitration clause means. The employer doesn't offer any argument based on the text of the agreement itself about why this dispute about paragraph 5A falls outside of that arbitration clause. And there isn't any argument to make. The clause is not, there's no ambiguity, there's nothing excluded from it. So it seems to me that that argument would be stronger if we didn't actually have the award. So it seems like this looked like a dispute between the union and the casino about whether the casino remained neutral. And it looks like it was not an individual dispute from those employees until the arbitrator comes along and awards reinstatement to those employees, which seems like a twist that maybe wouldn't have been necessary. I mean, what was the remedy, what were the range of remedies available to the arbitrator when you initiated this? Well, the arbitrator awarded three remedies, depending on how you categorize them. But one remedy is a notice posting to the employees. The arbitrator finds by terminating, and we only arbitrated one employee at this stage, so the arbitrator found that by terminating Chris Garragas, the union, the employer violated its obligation under 5A. And one remedy is to post posters throughout the casino's back hallways notifying employees of the award. The other remedy was reinstatement and back pay for Mr. Garragas, back pay if there is any back pay after mitigation. And so what the arbitrator says, and what we argued to the arbitrator, is that's a way to remedy the harm to the union. The harm to the union is the sort of corruption of the workplace environment by the employer's act of firing someone because that employee supported the union. Employees need to know that they can freely support the union and won't be fired for doing so, and there will be some consequence if they are fired for doing so. So by reinstating or ordering Chris Garragas to be reinstated and making him whole, the arbitrator is effectively remedying the environment in the workplace, which is what the harm to the union was. It's really important that the union is not bringing this case on Mr. Garragas' behalf. The union had no duty of fair representation to Mr. Garragas as it does in a – in a – in when the union is the bargaining representative. The union can abandon this case or compromise this claim at any time. It has no obligation to him. Its obligation is, or what it's entitled to do is protect its own rights under the agreement, and that's all the union is doing here. I would ask, though, that if the court decides that the question of arbitrability needs to be addressed by the court and not by the arbitrator, that it not remand that question to the district court. The court can, of course, decide the case on any grounds supported by the record, and remanding would undermine federal labor policy that exists in favor of swift resolution of labor disputes. The agreement itself provides for expedited arbitration. That's in the Arbitration Clause. The petition to compel was filed in May of 2016, more than two years ago. This dispute began when Mr. Garragas was fired in October of 2015, so nearly three years ago. Arbitration, of course, has concluded. So if we agree this was arbitrable, now that there's actually an award, would the remedy went too far and was beyond what the parties agreed was possible or something like that? Yes, they can petition to vacate the award, or the union can petition to confirm the award, in which case those arguments, whatever arguments the employer has, would be raised in that context. And that is, I think, the correct procedural posture, the way to raise those issues rather than in this case where those arguments obviously weren't raised below because there was no arbitration award to address at that point in time. It may be I had not come in thinking that we would decide the question ourselves as to whether this underlying dispute was covered by the agreement. So why do you think that we could just not remand and take it on our own? The Court can resolve any question. No, no. Why is it so easy? There's no you're looking at the text of the agreement. That's all that one needs to look at to decide whether this dispute is arbitrable. That's before the Court. And remanding, I think, would not serve the interests of judicial economy. No, no. I know. I know. I'm just asking. Help me understand why the merits question is so easy that we should just take it on ourselves. This strikes me. Hang on. This strikes me. I understand where the tribe is coming from. A fight over whether someone was properly terminated or not sounds like it's leagues away from what you guys were contracting about, right? So I understand what their instinct is. But you say, no, this is plainly covered by a neutrality agreement. So why is it so clear from the text of the agreement? Because that issue, even if one says, well, there's something to that argument, that's an issue for the arbitrator. It's not a question of arbitrability. They can argue, and they did argue to the arbitrator, this is a personnel dispute. There's reasons why it's not covered by the agreement. That's a dispute about what paragraph 5a, the neutrality clause, means. It's not a dispute about what the arbitration clause means, which is even if we say Desert Palace doesn't apply and the court decides arbitrability, the court is confined to interpreting what paragraph 10, the arbitration clause, means. And that clause is quite broad. There's no exclusions from it that are applicable here. There's no ambiguity. It's the broad language that the court in Desert Palace told the parties to use if they want to submit all disputes to arbitration. And so that's why this Court's job, even if it were to decide arbitrability, is quite simple. The question of whether the parties intended paragraph 5a to preclude the employer from terminating employees for organizing a union is a question about the meaning of paragraph 5a. And if you go back to the Steelworkers Trilogy cases, the Supreme Court back then was saying even when the court has to decide arbitrability because there's an arbitration clause that includes some things and excludes others, you've got to be really careful not to get into the question of the merits when you're figuring out arbitrability. That's why we have this presumption in favor of arbitration. All doubts are resolved in favor of arbitration. Ginsburg. And it would be a de novo question. Like, even if we did remand it, if it came back, it would all be de novo anyway, right? That's correct. Counsel, what would be the benefit of us taking judicial notice of the arbitration award? I provided, I submitted the request for judicial notice because I thought it was important as a matter of candor to let the Court know the stage of the proceeding. That's why I submitted it. But why the entire award? What would be the benefit of us taking judicial? What are you asking us to take judicial notice of? Just the fact that an arbitration award has been entered, but not the analysis or anything of the award? We wanted the Court to be aware of the stage of the proceedings that we're at. All right. The Court had denied the employer's motion to stay the arbitration proceedings, so that's why that occurred while we were waiting for this argument, and we wanted the Court to be aware of it. All right. Thank you. Well, the Tribe and the union actually agree on something. We also feel that it would be appropriate for this Court to make the determination of whether this dispute is subject to arbitration or not, rather than remand to the district court. Addressing the question. If we did that, then the arbitration award would be undone. Is that correct? That's correct. That would happen. Well, if we decided it was arbitrable, it wouldn't be. It would only be if we decided it's not arbitrable. I think there are separate issues, to be honest with you. I mean, we have our remedy with respect to that award. But the issue before this Court is whether this MOA requires the parties to arbitrate in the first instance. We believe that it does not. The other issue in the MOA I want to point out with my limited time is paragraph 14 does address the issue of sovereign immunity for the Tribe, and expressly states that the Tribe shall not, that the Tribe shall not be, or the MOA shall not be enforced by any other party other than the parties to this agreement, and shall give no rise to any claim or liability to any third party other than the parties hereto. Sorry. Can't you make that argument to whatever appeal you make of the arbitration award? I mean, we had no idea that the arbitrator was taking the record here. If we deny judicial notice, we don't have the arbitration award. We have no idea that the arbitrator is going to give any remedy to any third party. It shows the fear that we had and we've ---- I mean, it turns out you were good at predicting the future maybe, but that's an issue that you could use when you challenge the arbitration award in a separate proceeding. Do you deny what your opposing counsel said about the ability to challenge the arbitration award? I don't deny that, no. That's what will happen. But with respect to what's before this Court, I think this goes also to the ---- what the contract says and what the intent of the parties were. The fact that the tribe is not waiving its sovereign immunity with respect to any third party claims is pretty clear, that there was never contemplated that there would be any sort of personnel actions that could be taken resulting from the ---- But couldn't the remedy for their claim that you fired these two employees because they supported the union be that the union gets to give a speech and the employer stands there next to the union? I don't know what the remedy would be for that, Your Honor. Is there any problem with that in your view? Yeah. I think it would violate the neutrality agreement. Both parties agreed not to take sides. That's the basis of it. I think it's a stretch to then claim that these terminations for reasons unrelated to organizing activities somehow violated the MOA. They just didn't. And I think, again, these two employees have their remedies, which is through the tribal employment process. All right. Thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments in the case. The case just argued is submitted for decision by the court. The next case on calendar for argument is Dora v. Dearbrook Insurance Company.
judges: Rawlinson, Watford, Friedland